IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **VALENTINO JACKSON,** | : | |
| **Plaintiff** | : | |
| VS. | : | |
| | : | **CIVIL NO. 5:15-CV-0364-MTT-CHW** |
| Warden **MCLAUGHLIN, et al,** | : | |
| **Defendants** | : | |

## ORDER & RECOMMENDATION

Plaintiff Valentino Jackson, a prisoner confined at Macon State Prison in Oglethorpe, Georgia, has filed a *pro se* civil rights action in this Court seeking relief under 42 U.S.C. § 1983. Plaintiff also requests leave to proceed in this action *in forma pauperis*. For those reasons discussed below, Plaintiff will be permitted to proceed without pre-paying any portion of the filing fee. After reviewing Plaintiff's Complaint, as required by 28 U.S.C. § 1915A(a), the Court will also allow Plaintiff to go forward with his due process claims against Defendant Demundo. It is, **RECOMMENDED**, however, that Plaintiff's claims against Gregory McLaughlin, Brian Owens, and Steven Hayes be **DISMISSED WITHOUT PREJUDICE** pursuant to 28 U.S.C. § 1915A(b)(1).

**I.     Motion for Leave to Proceed** *in forma pauperis*

Plaintiff filed a motion for leave to proceed *in forma pauperis* (ECF No. 2, 7). Along with his Motion, Plaintiff also filed an affidavit in support of his claim of indigency

and a certified copy of his trust fund account statement as is required by 28 U.S.C. § 1915(a)(2). Based on these submissions, the undersigned finds that Plaintiff is presently unable to pre-pay the entire $350.00 filing fee. Plaintiff's Motion is thus **GRANTED**. This does not mean that the filing fee is waived. Plaintiff is still obligated to pay the full $350.00 filing fee under the payment plan set forth in 28 U.S.C. § 1915(b) and ordered herein. The Court's filing fee is not refundable, regardless of the outcome of this case.

## II. Preliminary Review

### A. Standard of Review

Because Plaintiff is a prisoner "seeking redress from a governmental entity or [an] officer or employee of a governmental entity," this Court is required to conduct a preliminary screening of his complaint. *See* 28 U.S.C. § 1915A(a). In so doing, the district court must accept all factual allegations in the complaint as true. *Brown v. Johnson*, 387 F.3d 1344, 1347 (11th Cir. 2004). *Pro se* pleadings are also "held to a less stringent standard than pleadings drafted by attorneys" and are "liberally construed" by the court. *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).

A *pro se* pleading is, nonetheless, subject to dismissal prior to service if the court finds that the complaint, when construed liberally and viewed in the light most favorable to the plaintiff, fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A(b)(1). To state a claim, a complaint must include "enough factual matter (taken as true)" to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). The

plaintiff must also allege sufficient facts to "raise the right to relief above the speculative level" and create "a reasonable expectation" that discovery will reveal evidence to prove a claim. *Id*. "Labels and conclusions" or "a formulaic recitation of the elements of a cause of action" that amount to "naked assertions" do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "[A] complaint must contain either direct or inferential allegations" from which the court can identify the "material elements necessary to sustain a recovery under some viable legal theory." *Green v. Sec'y, Fla. Dep't of Corr.*, 618 F. App'x 655, 656 (11th Cir. 2015) (quoting *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006). *See Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 684 (11th Cir. 2001).

### B. Plaintiff's Complaint

The present action arises from Plaintiff's confinement at Macon State Prison. In his Complaint, Plaintiff alleges that Defendant Officer Demundo wrongly identified him as member of the "Goodfellas" gang and placed him in Tier II long-term administrative segregation, in October of 2013, pursuant to an order from the Commissioner of the Georgia Department of Corrections, then Brian Owens, which required that all "Goodfellas" gang members be "locked down." Plaintiff apparently still remains confined in Tier II. Plaintiff claims, however, that Officer Demundo did not have (and did not present any) evidence to support the gang identification and placed Plaintiff in Tier II segregation without notice or an opportunity to be heard. Plaintiff has now filed the present action against Officer Demundo, Warden McLaughlin, and Brian Owens for violation of Due Process. *See* Compl., ECF No. 1, at 1-12.

The Complaint also asserts that the physical conditions of Plaintiff's confinement in Tier II are unconstitutional. Plaintiff complains that he is denied personal property and the ability to work, take part in prison programs, watch television, associate with other prisoners, engage in group sports and recreational activities, eat meals with other prisoners, and attend religious services. It thus appears that he wishes to bring claims for violations of the First and Eighth Amendments and possibly claims under Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), § 2 et seq., 42 U.S.C.A. § 2000cc et seq.

In what appears to be an entirely separate complaint attached to Plaintiff's initial pleading, *see id*. at 12-17, Plaintiff raises additional, unrelated claims against Warden McLaughlin, Brian Owens, and Officer Steven Hayes. In that portion of his pleading, Plaintiff claims that, on May 14, 2014, Warden McLaughlin maliciously and repeatedly slammed Plaintiff's arm and wrist in the metal tray flap in his cell door. Officer Hayes was apparently present when this occurred but took no action to intervene and protect Plaintiff from injury. Plaintiff has therefore brought claims for violation of his Eighth Amendment rights arising from this event.

    A. Due Process Claims

Plaintiff's allegations, when liberally construed and read in his favor, are sufficient to allow Plaintiff to go forward with due process claims against Defendant Demundo.

Plaintiff's Complaint, however, does not contain allegations that personally link either Brian Owens or Warden McLaughlin to a deprivation of due process. To the extent that Plaintiff intended to name these supervisory officials as parties in this action because

4

they "are legally responsible for the operation" of the prison and "for the welfare of all the inmates," his claims fail as a matter of law. *See* Compl. at 8. A supervisory official cannot be held liable, under § 1983, for the unconstitutional acts of his subordinates absent evidence that the official personally participated in the constitutional violation *or* that a causal connection exists between supervisor's acts and subordinate's conduct. *See See Averhart v. Warden*, 590 F. App'x 873, 874 (11th Cir. 2014) ("Averhart's contention that . . . defendants are legally responsible for his safety is just a legal conclusion: it is not a meaningful factual allegation and, therefore, is insufficient to preclude dismissal.").

In this case, Plaintiff has in fact identified no wrongdoing by McLaughlin or Owens with respect to his due process claims. Although Plaintiff does allege that Commissioner Owens set the policy to "lock down" all "Goodfellas," the Complaint does not allege any facts to suggest that this policy included or encouraged false identifications or a denial of due process for those prisoners. It is accordingly **RECOMMENDED** that Plaintiff's due process claims against Defendants Brian Owens and Warden McLaughlin be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

B. Possible Conditions of Confinement, First Amendment, and RULIPA Claims

Plaintiff's Amended Complaint possibly also challenges the conditions of his confinement under the First and Eighth Amendment. Again, however, Plaintiff's allegations fail to link his claims with the conduct of any defendant. His factual allegations also do not describe the sort of "extreme" deprivation that an Eighth Amendment conditions claim demands. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

To prevail on a conditions of confinement claim, a prisoner must show that his conditions are objectively and sufficiently "serious," or "extreme," so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010). This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004), or if society otherwise "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 37 (1993). The conditions described in Plaintiff's Complaint – a denial of his of personal property and ability to work, take part in prison programs, watch television, associate with other prisoners, engage in group sports and recreational activities, eat meals with other prisoners, and attend religious services – neither pose an unreasonable risk of serious damage to his health nor offend the contemporary standards of decency even when they are considered collectively. *See id.*

The restriction on Plaintiff's ability to attend "communal" religious services also fails to describe a violation of either his First Amendment rights or RLUIPA.[1] Prisoners do, of course, retain certain civil right protections while incarcerated, including their right to free exercise of their religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)

---

1 Section 3(a) of Religious Land Use and Institutionalized Persons Act of 2000 (RLUIPA), § 2 et seq., 42 U.S.C.A. § 2000cc et seq. "protects institutionalized persons who are unable freely to attend to their religious needs and are therefore dependent on the government's permission and accommodation for exercise of their religion." *Cutter v. Wilkinson*, 544 U.S. 709, 721 (2005).

6

(internal citations omitted). To state a claim, however, a prisoner must demonstrate that Defendants are imposing a burden on the free exercise of his religious beliefs – such that "under the restrictions imposed" he is "deprived of all means of practicing his religion." *Id; McCorkle v. Johnson*, 881 F.2d 993, 996 (11th Cir. 1989). *See also Asad v. Bush*, 170 F. App'x 668, 672 (11th Cir. 2006) (because "the guards did not prohibit the inmates from exercising their religion in an alternative location, [plaintiff] has not stated a claim under RLUIPA"). Plaintiff's allegations do not allege this type of deprivation. Although Plaintiff alleges that he is denied group worship, there is simply nothing in the Complaint to suggest that Plaintiff has no alternative means of exercising the asserted right while in Tier II segregation. He therefore also fails to state a free expression or RILUPA claim.

In the event that the undersigned must also liberally construe the Amended Complaint as including a claim for violation of Plaintiff's right to freedom of association, his allegations similarly fall short of stating a viable claim. "[F]reedom of association is among the rights least compatible with incarceration" and a curtailment of that freedom is in fact often necessary in the prison context. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). "The very object of imprisonment is confinement, [and] [m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner. An inmate does not retain rights inconsistent with proper incarceration." *Id.* Such limitation on inmate socialization and congregational activities is thus not "atypical" of the "ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Furthermore, Plaintiff does not allege that he has been deprived of *all* rights of association – such as the right to send

7

and receive letters.  Restrictions a prisoner's ability to verbally communicate with others will not be found unconstitutional so long as the affected inmate has an alternate means of communicating with the outside world.  *See e.g., Pitsley v. Ricks*, No. 96-CV-0372, 2000 WL 362023, at \*5 (N.D.N.Y. Mar. 31, 2000). *See also, Acosta v. McGrady*, No. CIV.A. 96-2874, 1999 WL 158471 at \*7 (E.D. Pa. March 22, 1999) (prisoner has a right to telephone use only if no other reasonable means of communication are available to him).

It is therefore **RECOMMENDED** that all of these claims also be **DISMISSED WITHOUT PREJUDICE** for failure to state a claim.

C. Excessive Force and Failure to Protect Claims

In what appears to be a separate complaint, Plaintiff has additionally brought Eighth Amendment claims against McLaughlin, Owens, and Officer Steven Hayes arising from Mc Laughlin's use of force on May 14, 2014, approximately six months after Plaintiff was validated as a gang member and placed in Tier II confinement.  There is nothing in the Complaint linking this event with Plaintiff's due process claim.

As a rule, a § 1983 plaintiff may set forth only related claims in his complaint. Claims against different parties are related only if they arise "out of the same transaction, occurrence, or series of transactions or occurrences" *and* share common issues of law or fact.  *See* Fed. R. Civ. P. 20.   A claim plainly does not arise out of the same transaction or occurrence if there is no "logical relationship between the claims."  *Construction Aggregates, Ltd. v. Forest Commodities Corp.*, 147 F.3d 1334, 1337 n.6 (11th Cir. 1998). Logically, "Claim A against Defendant 1 should not be joined with unrelated Claim B

against Defendant 2." G*eorge v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

In this case, Plaintiff's allegations fail to show any "logical relationship" between the due process claim against Officer Demundo and the subsequent use of force by Warden McLaughlin. For this reason - and because the statute of limitations would not bar the refiling of these claims - it is **RECOMMENDED** that Plaintiff's Eighth Amendment claims arising out of McLaughlin's May 14, 2014, use of force be **DISMISSED WITHOUT PREJUDICE** to Plaintiff's refiling the claims in a separate lawsuit. *See* Fed. R. Civ. P. 21; *DirecTV, Inc. v. Leto*, 467 F.3d 842, 844–45 (3d Cir. 2006).

### III.   Right to File Objections

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this recommendation with the United States District Judge to whom this case is assigned **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this Order and Recommendation. The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections. Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made. *See* 11th Cir. R. 3-1.

### IV.   Order for Service

In accordance with the findings herein, it is now **ORDERED** that service be made on **Officer Demundo** and that he file an Answer, or other response as appropriate under the Federal Rules, 28 U.S.C. § 1915, and the Prison Litigation Reform Act. Defendant is

reminded of the duty to avoid unnecessary service expenses, and the possible imposition of expenses for failure to waive service.

### DUTY TO ADVISE OF ADDRESS CHANGE

During this action, all parties shall at all times keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address. Failure to promptly advise the Clerk of any change of address may result in the dismissal of a party's pleadings.

### DUTY TO PROSECUTE ACTION

Plaintiff must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute. Defendants are advised that they are expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

### FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each

opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of Defendants from whom discovery is sought by Plaintiff. Defendants shall not commence discovery until such time as an answer or dispositive motion has been filed.  Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil Procedure.  Plaintiff's deposition may be taken at any time during the time period hereinafter set out, provided that prior arrangements are made with his custodian. Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Fed. R. Civ. P. 37 of the Federal Rules of Civil Procedure.

**IT IS HEREBY ORDERED** that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by Defendants (whichever comes first) unless an extension is otherwise granted by the Court upon a showing of good cause therefor or a protective order is sought by Defendants and granted by the Court.   This 90-day period shall run separately as to each Defendant beginning on the date of filing of each Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced

upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court. No party shall be required to respond to any discovery not directed to him or served upon him by the opposing counsel/party. The undersigned incorporates herein those parts of the Local Rules imposing the following limitations on discovery: except with written permission of the Court first obtained, INTERROGATORIES may not exceed TWENTY-FIVE (25) to each party, REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and REQUESTS FOR ADMISSIONS under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party. No party is required to respond to any request which exceed these limitations.

## REQUESTS FOR DISMISSAL AND/OR JUDGMENT

Dismissal of this action or requests for judgment will not be considered by the Court in the absence of a separate motion accompanied by a brief/memorandum of law citing supporting authorities. Dispositive motions should be filed at the earliest time possible, but no later than one hundred-twenty (120) days from when the discovery period begins.

## DIRECTIONS TO CUSTODIAN OF PLAINTIFF

Following the payment of the required initial partial filing fee or the waiving of the payment of same, the Warden of the institution wherein Plaintiff is incarcerated, or the Sheriff of any county wherein he is held in custody, and any successor custodians, shall

each month cause to be remitted to the Clerk of this court twenty percent (20%) of the preceding month's income credited to Plaintiff's account at said institution until the $350.00 filing fee has been paid in full. In accordance with provisions of the Prison Litigation Reform Act, Plaintiff's custodian is hereby authorized to forward payments from the prisoner's account to the Clerk of Court each month until the filing fee is paid in full, provided the amount in the account exceeds $10.00.  It is **ORDERED** that collection of monthly payments from Plaintiff's trust fund account shall continue until the entire $350.00 has been collected, notwithstanding the dismissal of Plaintiff's lawsuit or the granting of judgment against him prior to the collection of the full filing fee.

### PLAINTIFF'S OBLIGATION TO PAY FILING FEE

Pursuant to provisions of the Prison Litigation Reform Act, in the event Plaintiff is hereafter released from the custody of the State of Georgia or any county thereof, he shall remain obligated to pay any balance due on the filing fee in this proceeding until said amount has been paid in full; Plaintiff shall continue to remit monthly payments as required by the Prison Litigation Reform Act. Collection from Plaintiff of any balance due on the filing fee by any means permitted by law is hereby authorized in the event Plaintiff is released from custody and fails to remit payments.  In addition, Plaintiff's Complaint is subject to dismissal if he has the ability to make monthly payments and fails to do so.

**SO ORDERED**, this 12th day of January, 2016.

s/ Charles H. Weigle
Charles H. Weigle
United States Magistrate Judge
