**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | | |
|---|---|---|
| VALENTINO JACKSON, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 5:15-cv-00364 |
| | : | |
| DOMENICO DEMUNDO, | : | Proceedings under 42 U.S.C. § 1983 |
| | : | Before the U.S. Magistrate Judge |
| Defendant. | : | |
| | : | |

**REPORT AND RECOMMENDATION**

On September 21, 2015, Plaintiff Valentino Jackson filed his complaint pursuant to 42 U.S.C. § 1983. Doc. 1. Plaintiff is currently an inmate at Macon State Prison—the prison from which Plaintiff's complaint arises. In his Complaint, Plaintiff alleges that Defendant Officer Demundo wrongly identified him as member of the "Goodfellas" gang and placed him in Tier II long-term administrative segregation, in October of 2013, at the direction of the Commissioner of the Georgia Department of Corrections, then Brian Owens, who required that all "Goodfellas" gang members be "locked down." Doc. 1, p. 8. Plaintiff apparently still remains confined in Tier II. See Doc. 17, p. 2 ("Plaintiff has been in this program … up until now … 1470 days and counting"). Plaintiff claims, however, that Officer Demundo did not have (and did not present any) evidence to support the gang identification and placed Plaintiff in Tier II segregation without notice or an opportunity to be heard. Doc. 1, p. 8; Doc. 17, p. 2. Plaintiff filed the present action against Officer Demundo, Warden McLaughlin, and Brian Owens for violation of Due Process. See Doc. 1, at 1-12.

The Magistrate Judge screened Plaintiff's complaint pursuant to 28 U.S.C. 1915A, and allowed Plaintiff to proceed with his due process claim against Defendant Demundo, but

1

recommended that the claims against McLaughlin, Owens, and Hayes be dismissed as frivolous. Doc. 8. Following objection, the District Court adopted the Recommendation, and dismissed Plaintiff's other claims without prejudice. Doc. 16. Defendant Demundo filed a pre-Answer Motion to Dismiss pursuant to Rule 12(b), raising the defense of failure to state a claim. Doc. 13; Fed. R. Civ. P. 12(b)(6). Plaintiff responded and the Motion is ripe for review.

### PLAINTIFF SUFFICIENTLY STATES A DUE PROCESS CLAIM

To survive Defendant Demundo's Motion to Dismiss, Plaintiff's "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The instant *pro se* complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotations omitted).

To state a procedural due process claim, a prisoner first "must have a liberty interest created by the United States Constitution or by a state." *Walker v. Florida Parole Com'n*, 299 F. App'x 900, 901 (11th Cir. 2008) (citing *Monroe v. Thigpin*, 932 F.2d 1437, 1441 (11th Cir. 1991). The Supreme Court has identified two methods in which a prisoner's liberty interests may be deprived in relation to his confinement in a state prison. See *Sandin v. Connor*, 515 U.S. 472 (1995). The first occurs when the state deprives him of certain benefits conferred on other prisoners, the second occurs when his confinement is of such a nature that he is held in excess of his court imposed sentence. *Wallace v. Hamrick*, 229 F. App'x 827, 830 (11th Cir. 2007).

Plaintiff utilizes the former method, and alleges that he is being denied certain benefits while he is housed in Tier II at MSP.

Plaintiff's placement in administrative segregation does not give rise to a liberty interest, as "the transfer of an inmate to less amenable and more restrictive quarters for non-punitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Al-Amin, v. Donald*, 165 F. App'x 733, 738 (11th Cir. 2006) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). Instead, for a liberty interest to be triggered by a deprivation of in-prison benefits, the deprivation must "impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wallace*, 229 F. App'x at 830 (quoting *Sandin*, 515 U.S. at 484). "The touchstone of the inquiry into the existence of a protected, state-created liberty interest in avoiding restrictive conditions of confinement is not the language of the regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'" *Wilkinson v. Austin*, 545 U.S. 209, 223 (2005) (quoting *Sandin*, 515 U.S. at 484)

Plaintiff alleges that inmates housed in Tier II are subjected to treatment that imposes an atypical and significant hardship on him and his fellow inmates. Plaintiff claims that he is confined for twenty-three hours a day in a cell roughly "sixty feet square" and deprived of most of his personal property, "as well as the ability to work, attend educational and vocational programs, watch television, associate with other prisoners, attend recreation in a congregate setting with the ability to engage in sports." Doc. 1, p. 9. Plaintiff also asserts that he is forced to eat alone, and is not allowed to attend religious services. *Id.* He states that his placement is "indefinite … which Plaintiff would say is atypical and significant hardship." *Id.* at 8. Although Plaintiff does not specifically allege in his complaint how these conditions are different from the

conditions in general population, in his reply to Defendant's Motion to Dismiss, Plaintiff states "we don't get any [general population] privileges such as compound store, regular visitations, wilderness walks, law library access to law books and or computer access." Doc. 17-1, p. 4.

Taking the conditions of general population inmates as a baseline from which to measure the ordinary incidents of prison life, the conditions allegedly imposed upon Plaintiff make out a plausible claim of atypical and significant hardship. While Plaintiff's conditions are typical of segregated confinement,[1] his allegations that (1) day-to-day human interaction, including cell-to-cell communication, is restricted, (2) the duration of the confinement has lasted years, apparently contrary to GDC procedure that graduates inmates into less severe prison environments, and (3) placement disqualifies Plaintiff for parole consideration, are sufficient to indicate atypical and significant hardship. See *Wilkinson,* 545 U.S. 209; *Turner v. Upton*, 2013 WL 4852689 (M.D. Ga. 2013) (denying due process liberty interest claim based on confinement in administrative segregation where Plaintiff was allowed to graduate to less restrictive wing and Plaintiff was not parole eligible); *Sandin*, 515 U.S. 472 (placement in administrative segregation did not create liberty interest where the general population was "locked down" 12 to 16 hours a day and Plaintiff was only there for thirty days).

Even though Plaintiff states that his placement in Tier II precludes him from attending educational courses, which may be required by the parole board, the Constitution does "not confer a liberty interest in parole." *Walker*, 299 F. App'x at 902 (citing *Monroe*, 932 F.2d at 1441). State statutes and regulations may create such a liberty interest in parole if the state parole

---

[1] In *Wilkinson*, the Supreme Court described the Ohio State Penitentiary Supermax facility as follows, "in the OSP every aspect of an inmate's life is controlled and monitored. Incarceration there is synonymous with extreme isolation. Opportunities for visitation are rare and always conducted through glass walls. Inmates are deprived of almost any environmental or sensory stimuli and of almost all human contact. "[P]lacement at OSP is indefinite and, after the initial 30-day review, is reviewed just annually. Second is that placement disqualifies an otherwise eligible inmate for parole consideration. … [T]hese conditions standing alone might not be sufficient to create a liberty interest." *Wilkinson,* 545 U.S. at 224 (citations omitted). Plaintiff's allegations regarding his confinement in administrative segregation do not significantly differ.

4

system "creates a legitimate expectation of parole." *Heard v. Georgia State Bd. Of Pardons and Paroles*, 222 F. App'x. 838, 840 (11th Cir. 2007). "Georgia's parole system [does] not create such an expectation so that Georgia inmates have no liberty interest in parole." *Id*. (internal citations omitted).

Defendant asserts that the conditions as alleged do not rise to the level necessary to constitute atypical or significant hardship. Defendants rely on several Eleventh Circuit cases to argue that the amount of time Plaintiff has spent in Tier II, combined with the level of restriction imposed, does not meet the *Sandin* standard. Doc. 13-1, pp. 6-7. These cases are distinguishable from the factual restrictions Plaintiff has alleged and the fact that Plaintiff asserts he is being held *indefinitely*. While the Eleventh Circuit has rejected a liberty interest claim where Plaintiff was held in administrative segregation for four years and "the conditions of [] confinement were generally equivalent to general prison population conditions," see *Morefield v. Smith*, 404 F. App'x 443 (11th Cir. 2010), and where "inmates in administrative segregation 'are treated similarly' to those in general population," and held for three years, *Al-Amin*, 165 F. App'x 733, Plaintiff has alleged a wider gap between the conditions of confinement in general population and in Tier II than is described in either *Morefield* or *Al-Amin*. Construed in the light most favorable to the Plaintiff, the facts alleged are sufficient to show a protected liberty interest. See *Lopez v. Target Corp.*, 676 F.3d 1230, 1232 (11th Cir. 2012) ("We must accept all allegations in the complaint as true and construe the facts in the light most favorable to the plaintiff.").

Plaintiff also alleges that he was never given a hearing, that his placement is not based on any reason or rationale, and that he has still not received a hearing as to his placement in segregated confinement. Doc. 17-1, pp. 2, 3. The decision to deprive an inmate of a protected liberty interest must be based on "some evidence." *Superintendent, Massachusetts Correctional*

*Institiution, Walpole v. Hill*, 472 U.S. 445 (1985) (where good time credits are protected liberty interest, a decision to revoke the credits must be supported by some evidence even when they are revoked by a disciplinary board). Plaintiff's allegations are sufficient to show that he was deprived of a protected liberty interest without supporting evidence.

Plaintiff further alleges that Defendant Demundo knowingly kept him confined in Tier II in violation of due process. While Plaintiff's original complaint does not detail how each individual was specifically involved in the decision to keep him confined, Plaintiff has alleged that Demundo wrongfully kept Plaintiff in Tier II confinement by mistakenly identifying him as a member of Goodfellas. These allegations are sufficient to survive dismissal under Rule 12(b)(6).

However, to the extent that Plaintiff challenges his initial assignment into Tier II segregation at Valdosta State Prison on August 22, 2012, those claims are time barred. See Doc. 17-1, p. 1. The statute of limitations for filing a civil action pursuant to Section 1983 is two years, based on Georgia's statute of limitations for personal injury actions. *Lovett v. Ray*, 327 F.3d 1181, 1182 (11th Cir. 2003). The limitations period "does not begin to run until the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Id*. Any claim related to Plaintiff's original assignment into Tier II in August 2012 is time-barred.

## CONCLUSION

Thus, it is **RECOMMENDED** that the Defendant's Motion to Dismiss (Doc. 13) be **DENIED.** Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, **WITHIN FOURTEEN (14) DAYS** after being served with a copy thereof. The District Judge shall make a *de novo*

determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are further notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 5th day of August, 2016.

s/ Charles H. Weigle<br>
Charles H. Weigle<br>
United States Magistrate Judge